UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ELIZABETH TRUJILLO,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-19-CV-00337-DCG** |
| | § | |
| **VOLT MANAGEMENT CORP.,** *doing* | § | |
| *business as Volt Workforce Solutions,* | § | |
| **SCHNEIDER ELECTRIC BUILDINGS** | § | |
| **AMERICAS, INC.,** *doing business as* | § | |
| *Schneider Electric,* **and SCHNEIDER** | § | |
| **ELECTRIC USA, INC.,** *doing business as* | § | |
| *Schneider Electric.* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM ORDER

Presently before the Court is Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' ("Volt") "Motion to Compel Arbitration" (ECF No. 14) ("Motion") filed on April 1, 2020.[1]  Therein, Defendant Volt requests that the Court compel Plaintiff Elizabeth Trujillo ("Plaintiff") to arbitrate her claims in accordance with their arbitration agreements and dismiss this lawsuit.  Mot. at 6.  For the reasons that follow, the Court **GRANTS** Defendant Volt's Motion.

## I.  APPLICABLE LAW

The Federal Arbitration Act ("FAA") requires the Court to enforce an arbitration agreement in the same manner that it would enforce any other contract.  *See* 9 U.S.C. §§ 1–16; *Specialty Healthcare Mgmt., Inc., v. St. Mary Par. Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000).  Specifically, the FAA provides that:

---

[1] On April 8, 2020, Defendants Schneider Electric USA, Inc. d/b/a Schneider Electric and Schneider Electric Buildings Americas, Inc. d/b/a Schneider Electric (collectively "the Schneider Electric Defendants") filed their "Notice of Non-Opposition to Motion to Compel Arbitration" (ECF No. 16).

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

When adjudicating a motion to compel arbitration, the Court is directed to engage in a two-step analysis. *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The Court must first "determine whether parties agreed to arbitrate the dispute." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). This determination is guided by two questions "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement?" *Id.* (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 378, 381 (5th Cir. 2008)). Once the Court determines that the parties agreed to arbitrate their dispute, the Court must "consider whether any federal statute or policy renders [Plaintiff's] claims nonarbitrable." *Bailey*, 364 F.3d at 263. Should the Court conclude that an arbitration agreement is both valid and enforceable with respect to the dispute sought to be arbitrated, the burden then falls on the party opposing arbitration to establish that the dispute is nonarbitratable. *See Vesta Fire Ins. Corp. v. Emp'rs Reinsurance Corp.*, Civ. A. No. 3:05-cv-2404-P, 2006 WL 1506949, at *7 (N.D. Tex. May 31, 2006) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

## II.  DISCUSSION

Plaintiff advances three theories as to why the Court should deny Defendant Volt's motion to compel arbitration. Plaintiff's first argument is that Defendant Volt did not establish the existence of an arbitration agreement because Defendant's purported employment application and agreement do not contain Plaintiff's signature. Resp. in Opp. at 2–4, ECF No. 15. Plaintiff also argues that Defendant Volt has not met its burden to prove a valid arbitration agreement

because it has not produced the original written document it purports Plaintiff executed.  *Id.* at 4–5.  And finally, Plaintiff also avers that the Court must deny Defendant Volt's motion to avoid multiple and contradicting determinations in different forums because there are other defendants in this action who are not parties to the arbitration agreement at issue.  *Id.* at 5–7.  Notably, Plaintiff does not dispute whether his claims fall within the scope of the proffered arbitration agreement or whether any federal statute or policy renders his claims nonarbitrable.

## A.  Defendant Volt Has Produced a Valid Agreement to Arbitrate.

Plaintiff contends that Defendant Volt failed to establish a valid arbitration agreement because the purported employment application and employment agreement it offers did not contain Plaintiff's signature.  *Id.* at 2.  In its reply, Defendant Volt asserts that Plaintiff's argument lacks merit because its motion does contain signed copies of Plaintiff's employment application, employment agreements and acknowledgement of its Employment Dispute Resolution policy.  Reply at 2, ECF No. 17.  Further, Defendant Volt argues that even if it had not presented an arbitration agreement signed by Plaintiff, she would still be bound by the agreement because a valid arbitration agreement need not be signed under the FAA.  *Id.* at 3.  After due consideration, the Court concludes that Plaintiff's argument lacks merit because Defendant Volt has established that its arbitration agreements are valid.

Under Texas law, the party seeking to compel arbitration bears the burden of establishing the existence of an agreement to arbitrate.  *Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC*, Civ. A. No. H-12-0291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012) (citing *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000)); *Weiner v. Citigroup*, Civ. A. No. 3:01CV2246-M, 2002 WL 655531, at *2 (N.D. Tex. Apr. 19, 2002) (citing *Henry*, 18 S.W.3d at 688–89).  The party seeking to compel arbitration must prove by a preponderance of

the evidence that such an agreement exists.  *See Ffrench*, 2012 WL 1900930, at *2 (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).  Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, then a strong presumption in favor of arbitration attaches.  *J.M. Davison, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex. App.—El Paso 2014).

Conversely, a party seeking to avoid arbitration on the basis that the arbitration agreement is invalid bears the burden to produce evidence to substantiate its claim of invalidity. *Prevost v. Burns Intern. Sec. Services Corp.*, 126 F. Supp. 2d 439, 442 (S.D. Tex. 2000) (citing *T &R Enters., Inc. v. Contl. Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154–55 (5th Cir. 1992)).  To limit meritless claims of invalidity, the Fifth Circuit requires that a party challenging the validity of an arbitration agreement must make an "unequivocal denial that the agreement was made" and produce some evidence supporting the same.  *Id.* (citing *T &R Enters., Inc.*, 613 F.2d at 1278).

To determine whether an arbitration agreement is enforceable, courts apply the relevant state law principles that govern contract formation.  *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under Texas law, a valid contract consists of (1) an offer, (2) an acceptance, (3) meeting of the minds, (4) the consent of each party to the terms of the agreement, (5) execution and delivery of the contract with the intent that the agreement be mutual and binding, and (6) consideration.  *Song v. 4170 & 4231 & 4271 Altoona Drive Holdings Ltd. P'ship*, 616 F. App'x. 645, 648 (5th Cir. 2015).

Here, Defendant Volt produced copies of the several instances in which Plaintiff signed and agreed to be bound by arbitration before and during her employment.  For example, on

September 28, 2010, Plaintiff signed an employment application that states in part that Plaintiff,

if hired, agreed to this paragraph:

> 6.   AGREEMENT   TO   ARBITRATE   DISPUTES.   ANY   DISPUTE,
> CONTROVERSY OR CLAIM ARISING OUT OF, INVOLVING, AFFECTING
> OR RELATED IN ANY WAY TO THIS AGREEMENT OR A BEACH OF
> THIS AGREEMENT, OR ARISING OUT OF, INVOLVING, AFFECTING OR
> RELATED IN ANY WAY TO YOUR EMPLOYMENT OR THE CONDITIONS
> OF   YOUR   EMPLOYMENT   OR   THE   TERMINATION   OF   YOUR
> EMPLOYMENT,   INCLUDING   BUT   NOT   LIMITED   TO   DISPUTES,
> CONTROVERSIES OR CLAIMS ARISING OUT OF RELATED TO THE
> ACTIONS OF VOLT'S OTHER EMPLOYEES, UNDER FEDERAL, STATE
> AND/OR LOCAL LAWS, SHALL BE RESOLVED BY FINAL AND BINDING
> ARBITRATION, PURSUANT TO THE FEDERAL ARBITRATION ACT, IN
> ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN
> ARBITRATION ASSOCIATION IN THE STATE WHERE YOU ARE OR
> WERE LAST EMPLOYED BY VOLT.

*Id.*, Ex. C-8.  That same day, Plaintiff also signed an "Employment Agreement" that states in

part that Plaintiff agreed to this paragraph:

> 7. AGREEMENT TO ARBITRATE DISPUTES.  Any dispute, controversy or
> claim arising out of, involving, affecting or related to this Agreement, or breach of
> this Agreement, or arising out of, involving, affecting or related in any way to
> Employee's employment or the conditions of employment or the termination of
> Employee's employment, including but not limited to disputes, controversies or
> claims arising out of or related to the actions of the Company's other employees,
> under Federal, State and/or local laws, and/or other such similar laws or
> regulations, shall be resolved by final and binding arbitration, pursuant to the
> Federal Arbitration Act, in accordance with the applicable rules of the American
> Arbitration Association in the state where Employee is or was last employed by
> the Company.

*Id.*, Ex. C-4.  Further, Plaintiff also signed an "Acknowledgement" containing the following

paragraph:

> I understand and agree to be bound by the Company's Workplace Complaint
> Procedure contained in this handbook.
>
> Except as otherwise stated in this handbook, I agree to submit any and all disputes
> related to my employment to final and binding Arbitration, pursuant to the
> Alternative Dispute Resolution policy contained in this handbook.

*Id.*, Ex. C-1.  And finally, on August 8, 2014, Plaintiff signed a "Volt Management Corp.

Employment Agreement," which states in part that Plaintiff agreed to this paragraph:

> 8.  <u>AGREEMENT TO ARBITRATE DISPUTES.</u>  Any dispute, controversy or
> claim arising out of, involving, affecting or related to this Agreement, or breach of
> this Agreement, or arising out of, involving, affecting or related in any way to
> Employee's employment or the conditions of employment or the termination of
> Employee's employment, including any controversies or claims arising out of or
> related to the actions of the Company's other employees, under Federal, State
> and/or local laws, and/or other such similar laws or regulations, shall be resolved
> by final and binding arbitration, pursuant to the Federal Arbitration Act, in
> accordance with the employment rules of the American Arbitration Association
> ("AAA"), which can be found at www.adr.org or a copy of the AAA rules can be
> provided to Employee upon Employee's request to the Company. The arbitrator
> may award any and all remedies in accordance with the law of the state where
> Employee was last employed by the Company.

*Id.*, Ex. C-2.

These agreements evince Defendant Volt's offer of an arbitration agreement, Plaintiff's

acceptance by way of her signature, and each of the parties' consent to the terms of these

agreements.  Further, the execution and delivery of the arbitration agreements indicates the

parties' intent that the agreement be mutual and binding, and that the agreement is supported by

consideration.  *See In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (citing *In re U.S. Home

Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (per curiam) ("Mutual agreement to arbitrate claims

provides sufficient consideration to support an arbitration agreement.")).  Therefore, the Court

concludes that Defendant Volt has established that its arbitration agreements are valid and that

Plaintiff's argument on invalidity of these agreements lacks merit.

Further, even if none of these arbitration agreements contained Plaintiff's signature,

Plaintiff would still be bound by them.  While the FAA provides that courts can only enforce

written agreements to arbitrate, 9 U.S.C. § 3, it does not require the written arbitration

agreements to be signed for a court to enforce them.  *Valero Refining, Inc. v. M/T Lauberhorn*,

813 F.2d 60, 64 (5th Cir. 1987); *In re Macy's Texas, Inc.*, 291 S.W.3d 418, 419 (Tex. 2009)

("The FAA contains no requirements for the form or specificity of arbitration agreements except

that they be in writing; it does not even require that they be signed."). Hence, a party may be

bound by an agreement to arbitrate even in the absence of her signature. *Valero*, 813 F.2d at 64.

For example, a plaintiff will be bound by an arbitration agreement by continuing her

employment after receiving notice of an arbitration policy. *In re Dallas Peterbuilt, Ltd.*, 196

S.W.3d 161, 163 (Tex. 2006) ("An employer may enforce an arbitration agreement entered into

during an at-will employment relationship if the employee received notice of the employer's

arbitration policy and accepted it. … When determining whether an employee received notice of

a binding arbitration agreement, our cases do not confine that 'notice analysis' to the underlying

agreement, but to all communications between the employer and employee.").

**B.  Defendant Volt Has Produced Competent Evidence Showing a Valid Agreement to Arbitrate.**

        Plaintiff next objects to Defendant Volt's proffer of its exhibits containing the alleged

arbitration agreements on the grounds that they lack authenticity, that they are hearsay, and that

the "best evidence" rule precludes admission because Defendant Volt has not produced nor

proffered the original signed arbitration agreements. Resp. in Opp. at 4–5. But the Court readily

disposes of Plaintiff's objections.

        "To determine if evidence in support of a motion to compel arbitration is admissible,

courts apply the same standard as that applied to a motion for summary judgment." *Domain

Vault, LLC v. Rightside Group, Ltd.*, 3:17-CV-0789-B, 2018 WL 638013, at *3 (N.D. Tex. Jan

30, 2018). In a motion for summary judgment, evidence need not be in a format that would be

admissible at trial, but the party offering the summary judgment evidence must be able to prove

the underlying facts at trial with admissible evidence. *Id.*; *see also Maurer v. Indep. Town*, 870

F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." (citing Fed. R. Civ. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)*; LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)).

First, it is well established that signed instruments such as wills, contracts, and promissory notes, are all "writings that have independent legal significance, and are non hearsay" because, for example, "[a] contract is a verbal act . . . [that] has legal reality independent of the truth of any statement contained in it." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994). Hence, none of Defendant Volt's exhibits are hearsay because they have independent legal significance and they prove the operative fact of those contracts' existence. *Id.* Moreover, since none of the exhibits are hearsay, they are admissible at the motion for summary judgment stage and thus, need not be authenticated. *Maurer*, 870 F.3d at 384.

Further, under the "best evidence" rule, a party seeking to prove the "content" of a writing must produce the "original" writing itself. Fed. R. Evid. 1002. An "original" writing includes any "any printout—or other output readable by sight—if it accurately reflects the information" it contains. Fed. R. Evid. 1001. But "a duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Here, Plaintiff fails to raise a genuine question about the authenticity Defendant Volt's exhibits and also fails to argue why the circumstances make it unfair to admit them.

**C. Intertwined Claims Estoppel Applies in this Case.**

Plaintiff finally avers that the Court must deny Defendant Volt's motion to avoid multiple and contradicting determinations in different forums because the Schneider Electric Defendants are not parties to the arbitration agreements at issue.  Resp. in Opp. at 5–7.  But Defendant Volt argues that the Court should still compel arbitration based on intertwined claims estoppel because Plaintiff raised virtually indistinguishable claims and factual allegations against Defendant Volt and the Schneider Electric Defendants.  Reply at 5.  The Court agrees with Defendant Volt.

"As a general rule, an arbitration clause cannot be invoked by a non-party to the arbitration contract."  *G.T. Leach Builders, LLC v. Sapphire V.P.*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000), internal quotation marks omitted).  However, a non-signatory to an arbitration agreement may compel a party to arbitrate a claim "if the relevant state contract law so permits."  *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261-262 (5th Cir. 2014).

"Intertwined claims estoppel involves compelling arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'"  *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (citations and alterations omitted).  This exception applies when there is a "tight relatedness of the parties, contracts, and controversies."  *Id.* (citations omitted).  "Courts have employed this exception to dismiss 'strategic pleading' that seeks to avoid arbitration.  *Id.* (citations omitted).

To date, no Texas Supreme Court opinion has expressly recognized intertwined claims estoppel.  *Id.*  But in *Hays v. HCA Holdings, Incorporated*, 838 F.3d 605 (5th Cir. 2016), the

Fifth Circuit made an *Eerie* guess of what the Texas Supreme Court would decide and held that "the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel." *Id.*

Here, Plaintiff treats all defendants as a single unit in her pleadings, particularly in her original complaint, in which she raises virtually indistinguishable factual allegations against all defendants.  Notice of Removal, ECF No. 1, Ex. 1.  Indeed, Plaintiff alleges the same causes of action and claims the same damages against all defendants and does not explicitly allege anything differently against any defendant individually.  *Id.*, Ex. 1 at 10.  Further, based on Plaintiff's own allegations, it is undisputable that Plaintiff regarded all defendants as closely related and that there is a "tight relatedness of the parties, contracts and controversies."  *Hays*, 838 F.3d at 613.  Therefore, the Court concludes that the arbitration agreement must be compelled even if not all defendants were signatories to the agreement based on intertwined claims estoppel.

### III.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' "Motion to Compel Arbitration" (ECF No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties **SHALL** arbitrate all claims in the above-captioned case before a neutral arbitrator.

**IT IS FURTHER ORDERED** that all of Plaintiff Elizabeth Trujillo's claims against Defendants Volt Management Corp. d/b/a Volt Workforce Solutions, Schneider Electric USA, Inc. d/b/a Schneider Electric and Schneider Electric Buildings Americas, Inc. d/b/a Schneider Electric are **DISMISSED WITHOUT PREJUDICE.**[2]

---

[2]  Although the express terms of § 3 of the FAA provide that "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in

**IT IS MOREOVER ORDERED** that all pending motions, if any, are denied as **MOOT**.

**IT IS FINALLY ORDERED** the Clerk of the Court **SHALL CLOSE** this case.

**So ORDERED and SIGNED this 17th day of April 2020.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

---

writing for such arbitration . . . ," *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992), the Fifth Circuit has interpreted this language to mean only that a district court cannot deny a stay when one is properly requested. *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Id.* (quoting *Alford,* 975 F.2d at 1164). If all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate. *Id.* (citing *Alford,* 975 F.2d at 1164).